John L. LEWIS, Henry C. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950, Plaintiffs,

v.

HARCLIFF COAL COMPANY, Inc., a corporation, and Harcliff Mining Company, Inc., a corporation, Defendants.

Civ. A. No. 63–879.

United States District Court
W. D. Pennsylvania.

Jan. 7, 1965.

Plowman & Spiegel, Pittsburgh, Pa., for plaintiffs.

Theodore O. Struk, of Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., for defendants.

DUMBAULD, District Judge.

Plaintiffs are trustees of the Welfare and Retirement Fund of the United Mine Workers of America and sue for royalty claimed by reason of production of coal by defendants during the period October 1, 1957–September 30, 1963.

Defendants in their answer set up nineteen defenses. These restate in different forms defendants' basic contention, that when they signed the contracts giving rise to the royalties claimed the UMWA organizer knew they were not able to pay the royalty stipulated and told them that it would be all right if they just paid whatever they could or felt like paying, rather than the amount specified in the contract.

Plaintiffs have filed a motion for partial summary judgment to simplify the issues. The motion applies to Nos. 3–17, both inclusive.

Plaintiffs have also filed objections to interrogatories. As the occasion for the information sought thereby may depend upon the scope of the defenses remaining in the case, it will be appropriate first to deal with the motion relating to the defenses.

■ Whatever one may think of the equities of the situation confronting a small coal company during hard times, if faced with a situation such as defendants allege was the case here, it seems clear that the law does not permit the written welfare agreement to be ignored by reason of any matters affecting the relationship of the coal company and the union *inter sese.* The Supreme Court has made it plain, in Lewis v. Benedict Coal Co., 361 U.S. 459, 469, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960), that considerations of social welfare with regard to the benefits payable to miners from the fund make it inappropriate to admit defenses based upon the alleged misdeeds of the union. The Court explicitly states that the duty to pay royalty arises "on the production of coal independent of the union's performance." Ibid., 466, 80 S.Ct. 494.

■ Moreover it should be noted that in the case at bar we do not have a case such as Lewis v. Mears, 297 F.2d 101, 104 (C.A.3, 1962), relating to the need for mutual execution of a contract on both sides before it comes into effect as a binding obligation. Rather we are confronted with the question whether a written collective bargaining agreement can be entered into as an ostensible facade while the actual agreement is couched in different terms. Such a practice, we are convinced, is precluded as contrary to federal public policy in the labor relations field. Congressional policy in 29 U.S.C. § 186(c) (5) (B) strictly regulates the

establishment of welfare trusts and requires that their terms be specified in detail in writing. It would frustrate federal regulatory policy if a union and employer could enter into a fictitious or ostensible agreement different from their real agreement. Moreover 29 U.S.C. § 158(d) with respect to collective bargaining agreements imposes the requirement that they be reduced to writing upon request. That policy would also be violated if a union and employer could concoct a secret conspiratorial agreement different from that proclaimed to the public and to the union members. In this connection it must be remembered that determination of the extent and nature of the consequences flowing from federal legislation is a federal question, and that where "the policy of the law is so dominated by the sweep of federal statutes" that legal relations which they affect are governed by rules of law derived therefrom, conflicting state law and policy must yield to the legislative intent of Congress. Sola Electric Co. v. Jefferson, 317 U.S. 173, 176, 63 S.Ct. 172, 174, 87 L.Ed. 165 (1942).

With this principle in mind, we turn to a scrutiny of the challenged defenses.

The third defense is statute of limitations and/or laches. This suit was filed on October 10, 1963. The District of Columbia has a three year statute which if applicable would bar the action as to defaults before October 10, 1960. Under Pennsylvania law the entire sum due is collectible. Judge Miller's opinion of April 10, 1964, left the issue open, as depending upon where the cause of action arose. Since the obligation to pay arose, under the Benedict rule, when the coal was mined, and the coal was mined in Pennsylvania, and payable from proceeds there arising, it seems to us that the most significant contacts with the transaction are in Pennsylvania, and that the cause of action arose there, and is not barred by the statute of limitations. Nor is laches a bar. The suit has progressed, with promptitude, considering the volume of papers filed and discovery had.

The fourth defense is that defendants did not execute the entire contract. The contracts here constitute an accession by defendants to a master contract formulated by extensive collective bargaining agreements within the industry. By their terms there is a proper incorporation by reference of prior documents. We see no merit to this defense.

The fifth defense is merely a restatement of the fourth.

The sixth defense (fraud, deceit, accident and/or mistake) is the meat of defendants' contention. It alleges that plaintiffs knew of the representations made by union representatives. Unfortunately for defendants, Benedict disposes of this defense.

The seventh defense (duress, strike threats, violence) is subject to the same infirmity as the sixth.

The eighth defense (impossibility of performance) is without merit. Inability to pay is not equivalent to the doctrine of impossibility of performance in contract law. A person on relief could validly oblige himself on a judgment note for a million dollars.

The ninth defense is that the contract is too vague and indefinite to be valid, by reason of the fact that it contains no terms fixing its duration. If this were true, it might mean that it was terminable at will or after a reasonable time, but it would not render the contract invalid. See Lubrecht v. Laurel Shipping Co., 387 Pa. 393, 127 A.2d 687 (1956).

The tenth defense is merely a restatement of the fourth.

The eleventh defense (failure of consideration) is ineffective against plaintiffs under the Benedict doctrine.

The twelfth defense (breach of contract by UMWA) is obviously of no value by reason of Benedict.

The thirteenth defense (modification of the contract by subsequent novation) likewise is invalidated by Benedict.

The fourteenth defense (settlement, accord and satisfaction) meets the same hurdle.

The fifteenth defense (waiver or estoppel on the part of plaintiffs) appears to be without merit, since plaintiffs are acting in a fiduciary capacity and could not effectively, under Benedict, adversely affect the welfare of employees in the coal industry by their lack of diligence in executing their trust.

The sixteenth defense (that defendants have terminated the contracts, which were terminable at will) does not specify the date or dates of said alleged termination, and would in any event be no defense for liabilities already incurred and owing.

The seventeenth defense (that the contract provisions are applicable only to coal from particular mines) is unsound as a matter of law.

Accordingly, the foregoing defenses shall be stricken, and summary judgment with respect thereto rendered in favor of plaintiff.

This leaves in effect the following defenses:

First defense: failure to state a claim upon which relief can be granted.

Second defense: lack of jurisdiction, the dispute being one for arbitration. Judge Miller's opinion previously cited, supplemented by his memorandum of May 1, 1964, disposes of this defense.

Eighteenth defense: general denial.

[The nineteenth defense, of one defendant, repeats matters disposed of in the motion for judgment, and should likewise be stricken upon proper application by plaintiff.]

In light of the foregoing simplification of the issues, it remains to pass upon the propriety of defendants' challenged interrogatories. We first take up those of defendant Harcliff Mining Company.

The objections to interrogatories Nos. 1 and 2 are sustained, as too broad, burdensome and improper in seeking to supersede the normal pretrial practice with respect to plaintiff's contentions.

Objections to interrogatories Nos. 3 and 4 are sustained, as plaintiff has limited itself to proof of tonnage from defendants' own records. Objections to Nos. 5, 6, 7, 8, 12, 13 and 14 are sustained for the same reason.

Objection to No. 10 is sustained, on the ground of irrelevancy.

Objections to Nos. 15–20, 23–29 are sustained on the ground of irrelevancy under the Benedict doctrine. We should hold that these interrogatories should be answered if an appellate court should hold that Benedict was unsound or inapplicable.

Objections to Nos. 30–59, both inclusive, are sustained on the ground that they call for matters of general information, equally available to all parties, and also on the ground of irrelevancy.

Objection to No. 60 is sustained on the ground of irrelevancy.

Also pending are objections to certain interrogatories of defendant Harcliff Coal Co., Inc.

Objections to Nos. 1, 2, 32, 49, 50, 54–57, 61 and 62 are sustained; provided that if defendants contend that the claim sued upon by plaintiffs in this case has been satisfied or paid by Paul Zanotta or any other person, that matter may be made the subject of appropriate discovery if the pleadings are amended to assert payment as a defense.

Objections to Nos. 3, 41 and 42 are sustained, as they relate to a suit in another court and are irrelevant here.

Objections to Nos. 4–8 are sustained for the same reason as Nos. 1 and 2 of the prior set of interrogatories.

Objections to Nos. 10–20, 22–25 are sustained as calling for conclusions and opinions.

Objections to Nos. 26–28, 30, 35–40 are sustained on the ground of irrelevancy.

No. 43 has been adequately answered.

Objections to Nos. 45 and 46 are sustained on the ground of calling for matters of general knowledge and of irrelevancy.

Objections to Nos. 60, 63 and 69 are sustained as calling for a conclusion of law.

Objections to Nos. 65–68 are sustained on ground of irrelevancy.

, Objections to Nos. 71–83 are sustained on the ground of irrelevancy under Benedict doctrine.

An order shall be entered in accordance with the foregoing.

Partial summary judgment granted.